UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSTIN OXBORROW<br><br>              Plaintiff,<br><br>     v.<br><br>CITY OF COALINGA, CHIEF<br>PATRICIA MEDINA, OFFICER<br>MICHAEL TINGLEY, CPL. CHRIS<br>SIMMONS, and DOES 1 through<br>10, inclusive,<br><br>              Defendants. | 1:07-CV-00237 OWW SMS<br><br>MEMORANDUM DECISION AND ORDER<br>GRANTING DEFENDANTS' MOTION<br>FOR SUMMARY JUDGMENT (Doc. 17) |

## 1.   INTRODUCTION

This matter comes before the court on Defendants' City of Coalinga ("City"), Chief Patricia Medina ("Chief Medina"), Officer Michael Tingley ("Tingley"), CPL. Chris Simmons ("Simmons") motion for summary judgment to adjudicate Plaintiff Dustin Oxborrow's ("Oxborrow") § 1983 claims under the Fourth and Fourteenth Amendment for unlawful use of force and right to be free from unreasonable searches and seizures.  Oral argument was heard on May 5, 2008.

## 2.   PROCEDURAL BACKGROUND

Plaintiff filed his complaint on February 13, 2007.  (Doc. 1, Complaint)  On March 31, 2008, Defendants filed a motion for summary judgment.  (Doc. 17, Motion for Summary Judgment) Plaintiff opposed the motion on April 21, 2008.  (Doc. 20,

1

1  Opposition)  Defendants filed their reply on April 28, 2008.

2  (Doc. 23, Reply)

### 3.  FACTUAL BACKGROUND

**A.   Undisputed Facts**

On January 1, 2006, shortly after midnight, Dustin Oxborrow
and Russ Bridges went to Outlaws Bar in Coalinga, California.
(DSUF 1)  While at Outlaws Bar both Mr. Oxborrow and Mr. Bridges
drank alcoholic beverages.  (DSUF 2)  After being there a short
time they decided to leave.  (DSUF 3)  Mr. Oxborrow and Mr.
Bridges went to Mr. Oxborrow's parked car in the Outlaws Bar
parking lot and sat in the vehicle, rather than leave
immediately.  (DSUF 4)  The men were approached by Michelle
Madrigal, whom they knew.  (DSUF 5)  Ms. Madrigal got into Mr.
Oxborrow's car and sat in Mr. Bridges' lap.  (DSUF 6)  A witness,
Jose Lopez, heard a commotion coming from Mr. Oxborrow's car and
believed Ms. Madrigal was being sexually assaulted.  (DSUF 7)
Mr. Lopez then removed Ms. Madrigal from the car and took her to
the front door of the bar, leaving her there with an employee of
Outlaws Bar.  (DSUF 8)  Mr. Oxborrow and Mr. Bridges did not
leave the parking lot.  (DSUF 9)  Several people approached Mr.
Oxborrow's vehicle, including Mr. Lopez, David Deling and Sara
Scott, who was the Outlaws Bar employee working at the door
checking ID's.  (DSUF 10)  When Mr. Lopez, Mr. Deling and Ms.
Scott returned to the car, Mr. Oxborrow had a gun, and he racked
a bullet into the chamber.  (DSUF 11)

A call came into dispatch on New Years Eve reporting that
there was a man with a gun in the parking lot of the Outlaws Bar.
(DSUF 21)  Two of the witnesses interviewed by Officer Tingley

**2**

stated they heard a noise and saw Plaintiff with a gun.  (DSUF 22)  One of the witnesses called 911 and reported the incident.  (DSUF 23)  Officer Tingley has testified that Plaintiff was clearly intoxicated at the time the police arrived, exhibiting a strong odor of alcohol, bloodshot watery eyes and Plaintiff admitted to the officers that he had been drinking.  (DSUF 24)  Plaintiff admitted that he had not driven from the scene as he was concerned about being too intoxicated to drive.  (DSUF 25)  Officer Tingley testified that he did not believe Plaintiff acted in self-defense as he had the opportunity to leave the parking lot either by foot or in the car and choose not to.  Defendant Officer Tingley believed that someone in fear of their life would do just about anything to remove themself from such a situation.  (DSUF 27)  Plaintiff admitted he attempted to conceal the gun, and thought he had been successful.  (DSUF 28)

Mr. Bridges never considered driving himself and Plaintiff from Outlaws Bar.  (DSUF 40)  Plaintiff and his friend, Mr. Bridges both testified that they could have left the scene, through many options, but choose not to leave.  (DSUF 41)  When Plaintiff obtained his gun from the truck, there was no one present confronting him.  (DSUF 42)

After completing his investigation, Officer Tingley cited Mr. Oxborrow with carrying a concealed weapon and exhibiting a firearm.  (DSUF 14)  The District Attorney filed charges against Mr. Oxborrow, including Penal Code section 12025(a)(1), concealed firearm in a vehicle, Penal Code section 417(a)(2), drawing or exhibiting a firearm, and Penal Code section 12031(a)(1) carrying a loaded firearm.  (DSUF 16)  A criminal trial was held and Mr.

Oxborrow was acquitted of the charges.  (DSUF 17)  Shortly after, the trial judge made a finding of factual innocence and ordered the records sealed and eventually destroyed.  (DSUF 16)  After opening statements the prosecutor withdrew the first count, concealed firearm in a vehicle.  (DSUF 19)  The court acquitted Mr. Oxborrow of count 2, drawing or exhibiting a firearm and the jury found Mr. Oxborrow not guilty of the third count, carrying a loaded firearm.  (DSUF 20)

Plaintiff has designated no experts.  (DSUF 47)  No discovery has been conducted on the issue of Defendant City of Coalinga discriminating against non-residents of Coalinga.  (DSUF 50)[1]

B.   Disputed Facts

Plaintiff contends that Mr. Lopez, who approached the car where Plaintiff was located, is 6'2" and weighs 280 lbs.  He was joined by a dozen persons initially, and the group quickly swelled to at least 18 or 20, who were calling Plaintiff and Mr. Bridges "rapists."  They also yelled "we'll kill you."  (PSUF 10)

Defendants contend that when Mr. Lopez, Mr. Deling and Ms. Scott returned to the car, Mr. Oxborrow had a gun, and he racked a bullet into the chamber.  (DSUF 11)  Plaintiff contends he did this because he feared for his life and that of Mr. Bridges and

[1] Defendants' facts 29-39, 43-46, 48-49 are undisputed facts concerning Defendant Sergeant Simmons and Defendant Chief Medina. Plaintiff does not dispute these facts because he has indicated in his Opposition that he will stipulate to their dismissal.  The facts pertinent to these Defendants are omitted from the fact section.

4

was calling 911.  (PSUF 11)

Defendants contend that when the police arrived, with guns drawn, they detained all individuals around Plaintiff's vehicle. (DSUF 12)  Plaintiff asserts that when Defendant Tingley arrived, he asked who had the gun.  Plaintiff Oxborrow told him the gun was on the front seat of the car in plain view and Defendant Tingley saw the gun in plain view.  (PSUF 12)

Plaintiff alleges that he volunteered to Defendant Officer Tingley that there was a gun, that it belonged to him, and that he had retrieved it from the trunk, and placed it in plain view on the front seat because he believed that the mob was about to kill him and Mr. Bridges.  But he was arrested anyway.  (PSUF 13) Defendant maintains that Plaintiff Oxborrow was placed under arrest for carrying a loaded firearm in a vehicle, after Mr. Oxborrow told Officer Tingley the gun in the car was his and he did not have a concealed weapons permit.  (DSUF 13)

Plaintiff contends that Defendant Tingley in his probable cause declaration to justify the arrest, stated under oath that "Oxborrow admitted to chambering one round to protect his life." And this is a complete defense to both charges and Defendant Tingley should have known that.  (PSUF 14)

Defendants contend that Plaintiff was cited and released within a few hours.  (DSUF 15)  Plaintiff contends he was left handcuffed in an uncomfortable position desperately needing to urinate for an "immense amount of time."  (PSUF 15)

Defendant Officer Tingley states that he did not believe Plaintiff was acting in self-defense as Plaintiff was not the target of the individuals at the scene.  It was his friend who

the individuals were addressing.  (DSUF 26)  Plaintiff contends
that he believed that both he and Mr. Bridges' lives were
threatened.  (PSUF 26)

C.   Curtis J. Cope: Former Police Instructor and Officer

        Curtis J. Cope, was a member of the United States Army (2
years) and a Police Officer for twenty nine and half years in
Santa Ana and Huntington Beach, California.  (Doc. 17-6, p. 1:26-
25-2:1)  Mr. Cope also served as an instructor at the Regional
Criminal Justice Training Center at Golden West College for
twenty-seven years.  (*Id.* at p. 2:15-17)

        During Mr. Cope's service in law enforcement, he served in
the rank of police officer as a Patrol Officer, Motor Officer,
Special Enforcement Team Officer, SWAT Officer, Field Training
Officer, Defense Tactics Instructor for Huntington Beach P.D. and
temporary assignments as background investigator and helicopter
observer.  (*Id.* at p. 2:1-4)  Mr. Cope also attained the rank of
Sergeant as a Patrol Supervisor, Motor Supervisor, Accident
Investigation Supervisor, SWAT Team Supervisor, Special
Enforcement Team Supervisor, Liaison to the Uniform Division
Commander, Lead Defense Tactics Instructor and FTO Program
Supervisor and many associated duties.  (*Id.* at p. 2:4-7)  Mr.
Cope was promoted to the rank of Lieutenant as a Patrol Watch
Commander, COP Area Commander, General Investigation Bureau
Commander, SWAT Team Leader, Lead Defense Tactics Instructor, FTO
Program Manager and many associated duties.  (*Id.* at p. 2:7-10)
Mr. Cope has participated in developing and serving search
warrants in excess of 100 occasions.  (*Id.* at p. 2:10-11)

        Mr. Cope has trained over 9,000 police officers or recruit

6

trainees through his teaching career.  (*Id.* at p. 2:17-18)   Mr. Cope has taught and been a subject matter expert for Peace Officer Standards and Training (POST), developed curriculum, developed standards for training, developed and taught a wide range of law enforcement course work for over thirty-seven years. (*Id.* at p. 2:18-20)   Mr. Cope has assisted in the development of and continues to administer and teach in California POST Institute of Criminal Investigations (ICI) Instructor Workshop Series, which provides training throughout California to law enforcement investigators or detectives.  (*Id.* at p. 2:20-23)

Mr. Cope has professional certificates from the California Commission on Peace Officer Standards and Training (POST) in the following areas: Basic (1970); Intermediate (1975); Advanced (1977); Supervisory (1983); Management (1992); and Master Instructor (1994).  (*Id.* at p. 2:13-15)   Mr. Cope claims he has expertise in the use of force, arrest, control tactics, patrol procedures and practices, detective procedures and practices, supervision, report writing, training, adult learning and instructor development.  (*Id.* at p. 2:25-27)

Mr. Cope has testified as an expert in over 100 law enforcement cases in Municipal, Superior and Federal Courts.  Mr. Cope has given deposition or trial testimony in several state and federal courts.  (*Id.* at p. 2:25-3:2)   Mr. Cope has reviewed pertinent documents in this suit, including, the Complaint, the criminal trial transcript, depositions, police department records and the Commission on Peace Officer Standards and Training Basic Academy Workbook Series.  (*Id.* at p. 3-16)

7

1

### 4. <u>LEGAL BACKGROUND</u>

2

**A.   Summary Judgment Standard**

3    Summary judgment is warranted only "if the pleadings,
4    depositions, answers to interrogatories, and admissions on file,
5    together with the affidavits, if any, show that there is no
6    genuine issue as to any material fact." Fed. R. Civ. P. 56(c);
7    *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).
8    Therefore, to defeat a motion for summary judgment, the non-
9    moving party must show (1) that a genuine factual issue exists
10   and (2) that this factual issue is material. *Id.* A genuine
11   issue of fact exists when the non-moving party produces evidence
12   on which a reasonable trier of fact could find in its favor
13   viewing the record as a whole in light of the evidentiary burden
14   the law places on that party. *See Triton Energy Corp. v. Square
15   D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v.
16   Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). Facts are
17   "material" if they "might affect the outcome of the suit under
18   the governing law." *Campbell*, 138 F.3d at 782 (quoting *Anderson*,
19   477 U.S. at 248).

20   The nonmoving party cannot simply rest on its allegations
21   without any significant probative evidence tending to support the
22   complaint. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.
23   2001).

24                 [T]he plain language of Rule 56(c) mandates the
                   entry of summary judgment, after adequate time
25                 for discovery and upon motion, against a party
                   who fails to make a showing sufficient to
26                 establish the existence of an element essential
                   to the party's case, and on which that party
27                 will bear the burden of proof at trial.  In such
                   a situation, there can be "no genuine issue as
28                 to any material fact," since a complete failure

**8**

1          of proof concerning an essential element of the
           nonmoving party's case necessarily renders all
2          other facts immaterial.

3   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The more

4   implausible the claim or defense asserted by the nonmoving party,

5   the more persuasive its evidence must be to avoid summary

6   judgment.  *See United States ex rel. Anderson v. N. Telecom,*

7   *Inc.*, 52 F.3d 810, 815 (9th Cir. 1995).  Nevertheless, the

8   evidence must be viewed in a light most favorable to the

9   nonmoving party.  *Anderson*, 477 U.S. at 255.  A court's role on

10  summary judgment is not to weigh evidence or resolve issues;

11  rather, it is to determine whether there is a genuine issue for

12  trial.  *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th

13  Cir. 1996).

14  **B.    Summary Judgment in a Qualified Immunity Case**

15       All individual Defendants invoke the defense of qualified

16  immunity.  Deciding qualified immunity entails a two-step

17  analysis.  First, whether a constitutional violation occurred at

18  all.  If the answer to this question is yes, the court must then

19  inquire whether the right violated was "clearly established" by

20  asking whether a reasonable officer could believe that the

21  defendant's actions were lawful.  *See Saucier v. Katz*, 533 U.S.

22  194, 201 (2001).

23       The traditional summary judgment approach should be used in

24  analyzing the first step of the *Saucier* analysis:

25          A court required to rule upon the qualified immunity
           issue must consider, then, this threshold question:
26          Taken in the light most favorable to the party
           asserting the injury, do the facts alleged show the
27          officer's conduct violated a constitutional right?
           Where the facts are disputed, their resolution and
28          determinations of credibility are manifestly the

                                   9

1  province of a jury.

2  *Wall v. County of Orange*, 364 F.3d 1107, 1110-1111 (9th Cir.

3  2004) (internal citations and quotations omitted).  In the second

4  step, the court must ask whether it would be clear to a

5  reasonable officer that his conduct was unlawful in the situation

6  confronted.  Although this inquiry is primarily a legal one,

7  where the reasonableness of the officer's belief that his conduct

8  was lawful "depends on the resolution of disputed issues of

9  fact...summary judgment is not appropriate."  *Wilkins v. City of*

10 *Oakland*, 350 F.3d 949, 956 (9th. Cir. 2003) (citing *Saucier*, 533

11 U.S. at 216 (Ginsburg *J.*, concurring).)

12 C.   Civil Rights Claims Under 42 U.S.C. Section 1983

13      "Section 1983 provides for liability against any person

14 acting under color of law who deprives another 'of any rights,

15 privileges, or immunities secured by the Constitution and laws'

16 of the United States."  *S. Cal. Gas Co. v. City of Santa Ana*, 336

17 F.3d 885, 887 (9th Cir. 2003)(quoting 42 U.S.C. § 1983).  "The

18 rights guaranteed by section 1983 are 'liberally and beneficently

19 construed.'"  *Id.* (quoting *Dennis v. Higgins*, 498 U.S. 439, 443

20 (1991)).  Pursuant to 42 U.S.C. § 1983, Plaintiff may bring a

21 civil action for deprivation of rights under the following

22 circumstances:

23      Every person who, under color of any statute,
        ordinance, regulation, custom, or usage, of any State
24      or Territory or the District of Columbia, subjects,
        or causes to be subjected, any citizen of the United
25      States or other person within the jurisdiction
        thereof to the deprivation of any rights, privileges,
26      or immunities secured by the Constitution and laws,
        shall be liable to the party injured in an action at
27      law, suit in equity, or other proper proceeding for
        redress, except that in any action brought against a
28      judicial officer for an act or omission taken in such

10

1
2
3
4

               **officer's judicial capacity, injunctive relief shall
not be granted unless a declaratory decree was
violated or declaratory relief was unavailable. For
the purposes of this section, any Act of Congress
applicable exclusively to the District of Columbia
shall be considered to be a statute of the District
of Columbia.**

5
6
7
8
9
10
11

     **To establish personal liability in a § 1983 action, it is
enough to show that the official, "acting under color of state
law, caused the deprivation of a federal right." *Hafer v. Melo*,
502 U.S. 21, 25 (1991) (internal quotations omitted).  Public
officials sued in their personal capacity may assert personal
liability defenses, such as qualified immunity. *Dittman v.
California*, 191 F.3d 1020, 1027 (9th Cir. 1999).**

12

                    **5.   DISCUSSION**

13

**A.   § 1983 Fourth Amendment Unreasonable Search and Seizure**

14
15

     **I.   Claims Against Defendants Chief Patricia Medina and
Defendant CPL. Chris Simmons**

16
17
18
19
20
21
22
23
24

     **Plaintiff Oxborrow's Opposition to Defendants' Statement of
Undisputed Facts, states: "Plaintiff does not dispute the facts
regarding Sergeant Simons and Chief Medina.  He therefore will
stipulate to their dismissal."  (Doc. 19, p.4:20-22).  Plaintiff
provides no evidence relating to Defendant Simons and Medina on
the first claim under the Fourth and Fourteenth Amendment, second
claim under Section 1983, Policy and Custom and third claim,
Section 1983, Equal Protection under the Fourteenth Amendment.
Defendants' Motion for Summary Judgment as to these claims for
Defendants Simons and Medina is GRANTED.**

25

     **II.   Official Capacity**

26
27
28

     **Plaintiff brings suit under § 1983 for violation of his
civil rights to be free from unreasonable search and seizure**

                        **11**

under the Fourth Amendment (First Claim) and violation of equal protection of the laws under the Fourteenth Amendment (Third Claim) against Defendant Officer Tingley in his official capacity.

When state officials are sued in their official-capacities, the suit is treated as against the state. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). "1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 fn. 8 (9th Cir. 2002). In such suits, the real party in interest is the entity for which the official works. *Hafer v. Melo,* 502 U.S. 21, 25 (1991). By contrast, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions [taken] under color of state law." *Graham,* 473 U.S. at 165.

A suit against Defendant Tingley, in his official capacity is the same as a suit against the payor of any damages that may be awarded, therefore the proper defendant is Defendant City of Coalinga.

Plaintiff's § 1983 claim against Defendant Tingley in his official capacity is DISMISSED from the suit WITH PREJUDICE, it is redundant.

III. Fourth Amendment: Unreasonable Search and Seizure

"It is not disputed that the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an

offense." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest. We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest." *Id.* "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 37.

There is no dispute that Officer Tingley was acting under color of state law when he arrested Plaintiff. Plaintiff must also prove deprivation of a federal constitutional or federal statutory right. Plaintiff contends that his misdemeanor arrest for alleged violations of California Penal Code Sections 12025 and 417, both misdemeanors in California, violated his Fourth Amendment rights because the alleged crimes were not committed in Defendant Officer Tingley's presence. Plaintiff also contends that Defendant Officer Tingley did not have probable cause to arrest him because Plaintiff told Tingley that he was the owner of the gun, the gun was in plain view and he had the gun in plain view because he feared for his life, and needed it for self-defense.

Plaintiff's contention that his Fourth Amendment rights were violated because he was arrested for misdemeanor violations not

committed in the presence of Officer Tingley, is not sustainable. *Barry v. Fowler*, 902 F.2d 770 (9th Cir. 1990) acknowledges that *under California law*, an officer may make a warrantless arrest only if he has reasonable cause to believe that a person has committed a misdemeanor in his presence under Cal.Penal Code § 836, subd. 1, however "*section 1983 action is not dependent* on whether [the Officer] was present when [the plaintiff] committed the misdemeanor. Rather, the crucial inquiry is whether [the Officer] had probable cause to make the arrest." *Id.* at 772 (emphasis added) (no Fourth Amendment violation in § 1983 case when plaintiff arrested in violation of a state law.) The question of whether the officer had probable cause based on the disputed facts is generally a question for the jury. *McKenzie v. Lamb,* 738 F.2d 1005, 1008 (9th Cir. 1984).

Plaintiff cites *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001) for the principle that a presence requirement is necessary, but there however the Court specifically stated it was not addressing this requirement: "We need not, and thus do not, speculate whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests." *Id.* at 341 fn. 11.

Plaintiff also brings his Section 1983 suit claiming the arrest was not grounded in state law. It is proper to look to state law in determining whether or not an arrest was constitutional. *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 950 (9th Cir. 2003); *Edgerly v. City & County of San Francisco*, 495 F.3d 645, 655 (9th Cir. 2007). "To determine whether the Officers had probable cause at the time of the

**14**

arrest, we consider 'whether at that moment the facts and circumstances within [the Officers'] knowledge ... were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Edgerly,* 495 F.3d at 651, *quoting Beck v. Ohio*, 379 U.S. 89, 91 (1964). "[P]robable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest ... however, an arrest is still unlawful unless probable cause existed under a specific criminal statute." *Id.* at 651-652 [citations omitted].

Here, Officer Tingley claims he had probable cause to arrest Plaintiff for carrying a concealed weapon, under California Penal Code § 12025 and exhibiting a firearm, under California Penal Code § 417(a)(2) and recommended charges be filed on these two violations.  The District Attorney filed three charges against Plaintiff: violation of California Penal Code section 12025(a)(1), concealed firearm in vehicle; California Penal Code section 417(a)(2), drawing or exhibiting a firearm; and California Penal Code section 12031(a)(1), carrying a loaded firearm.

California Penal Code Section 12025(a)(1), titled "Carrying weapon concealed within vehicle or on person; offense; arms in holster or sheath," provides[2]:

---

[2] **Plaintiff also cites and addresses California Penal Code § 12031: "(a)(1) A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public**

> **(a) A person is guilty of carrying a concealed firearm when he or she does any of the following:**
> **(1) Carries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.**

Cal.Penal Code § 12025(a)(1).

California Penal Code Section 417(a)(2), titled "Drawing, exhibiting, or using firearm or deadly weapon; self defense; peace officers," provides:

> **(2) Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses a firearm in any fight or quarrel is punishable as follows:**

> > **(A) If the violation occurs in a public place and the firearm is a pistol, revolver, or other firearm capable of being concealed upon the person, by imprisonment in a county jail for not less than three months and not more than one year, by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment.**

> > **(B) In all cases other than that set forth in subparagraph (A), a misdemeanor, punishable by imprisonment in a county jail for not less than three months.**

Cal.Penal Code § 417(a)(2).

Plaintiff contends that as to probable cause for arrest under California Penal Code § 12025, it is undisputed that the weapon in issue was found in plain view on the front seat of the auto, therefore nothing criminal was observed by Officer Tingley.

As to probable cause for arresting Plaintiff in violation of California Penal Code § 417(a)(2), Plaintiff argues that Officer

---

street in a prohibited area of unincorporated territory." However, Officer Tingley did not claim probable cause to arrest Plaintiff for this offense.

1  Tingley was aware that Plaintiff had accessed and loaded the
2  weapon in lawful self-defense of himself and others.   Officer
3  Tingley arrived on the scene and asked who had the gun. Plaintiff
4  states that he told Officer Tingley that the gun was his, Officer
5  Tingley saw that the gun was in plain view in the front seat of
6  his vehicle, and Plaintiff had the gun in plain view because he
7  feared for his life.   Plaintiff also asserts that he did not
8  exhibit his weapon in a rude or angry manner either in or out of
9  Officer Tingley's presence.   Plaintiff relies on a published
10  opinion by former California Attorney General Stanley Mosk, which
11  opines in regards to Penal Code Section 12025, that it "does not
12  prohibit the carrying of a concealable firearm on the seat of
13  automobile so long as the weapon is exposed to plain view."   38
14  Cal.Op.Atty.Gen. 199.   Plaintiff provides no case law supporting
15  this opinion.   This is not a clearly established area of the law.
16      Officer Tingley in response states that he was responding to
17  a New Years Eve 911 call, reporting that there was a man with a
18  gun in the parking lot of Outlaws bar.   In opposition to
19  Plaintiff's self-defense assertion, Officer Tingley responds that
20  Plaintiff appeared intoxicated, that Plaintiff stated to him that
21  he had an opportunity to leave but choose not to because he was
22  too intoxicated.   All this weighed in Officer Tingley's
23  determination that there was no valid self-defense claim.
24  Officer Tingley states that if Plaintiff was in fear of his life
25  and safety, one would do pretty much "everything and anything to
26  remove themself from the situation if, in fact, the person is in
27  fear for his life."   (Doc. 17, Decl. Hager, Exhibit L, Depo.
28  Tingley, p. 56:20-25-57:1-23)   Defendant Officer Tingley alleges

17

1   that Plaintiff had the opportunity to slowly walk away or run

2   away from the scene because Mr. Lopez, who was posing all the

3   threat (including against Mr. Bridges), had left the scene.  But

4   Plaintiff and Mr. Bridges remained sitting in their vehicle for a

5   period of time when they had the opportunity to leave.  (*Id.*, p.

6   60:10-16)  Further, two of the witnesses Officer Tingley

7   interviewed stated they heard a noise and saw Plaintiff holding a

8   gun.  Plaintiff admitted he attempted to conceal the gun and

9   thought he had been successful.  Plaintiff's gun was loaded and

10  it was not in plain view.  Plaintiff admitted to Officer Tingley

11  that he did not have a concealed weapons permit.  Plaintiff did

12  not have the gun in plain sight nor did Plaintiff have the gun in

13  a locked box within his car.  Defendant also argues that while

14  Plaintiff argues the gun was in plain sight, on the front seat of

15  the car, Plaintiff testified that he was trying to conceal the

16  gun.  Defendant argues that whether an officer had probable cause

17  to arrest is determined at the time of the arrest not the facts

18  thereafter.

19        There are disputed issues of material fact concerning

20  whether Plaintiff acted in self-defense, acted in a rude and

21  threatening manner, and concealed a weapon.  The disputed issues

22  of material fact relate to the question of whether Defendant

23  Officer Tingley had probable cause to arrest Plaintiff for

24  carrying a concealed firearm, and exhibiting a firearm, as it is

25  disputed whether the offenses were committed in the officers'

26  presence.

27        IV. Qualified Immunity

28        Defendant Tingley also asserts that he is entitled to

**18**

qualified immunity on Plaintiff's Section 1983 claim.  "In order to be entitled to qualified immunity, the officers must show that their discretionary conduct did not violate any clearly established rights of which a reasonable person should have known."  *Penilla v. City of Huntington Park,* 115 F.3d 707, 709 (9th Cir. 1997).  "Summary judgment on qualified immunity is not proper unless the evidence permits only one reasonable conclusion.  Where 'conflicting inferences may be drawn from the facts, the case must go to the jury.'"  *Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082, 1087 (9th Cir. 2000)(quoting *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000)). Defendant Officer Tingley has the burden to show that "'a reasonable officer could have believed, in light of the settled law, that he was not violating a constitutional or statutory right.'"  *Id.* (quoting *Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1996)).  "If the right is clearly established, the court must determine whether the defendant's conduct was 'objectively legally reasonable' given the information possessed by the defendant at the time of his or her conduct."  *Lawrence v. U.S.*, 340 F.3d 952, 955 (9th Cir. 2003)(citing *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)).  "[Q]ualified immunity shields agents ... if 'a reasonable officer could have believed [the action] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'"  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)(quoting *Anderson*, 483 U.S. at 641.)

Nevertheless, the evidence must be viewed in a light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255.

1     It is clearly established law that arresting an individual

2 without probable cause constitutes unreasonable search and

3 seizure under the Fourth Amendment.  The qualified immunity

4 analysis reduces to a single particularized inquiry: whether "a

5 reasonable officer could have believed that probable cause

6 existed [for the] arrest" under the circumstances.  *Edgerly*, 495

7 F.3d at 654.  If so, Officer Tingley is entitled to qualified

8 immunity.  If the reverse, then Officer Tingley is not entitled

9 to immunity under the law.  *Hunter*, 502 U.S. at 227.

10     Probable cause existed if "at the moment the arrest was made

11 ... the facts and circumstances within their knowledge and of

12 which they had reasonably trustworthy information were sufficient

13 to warrant a prudent man in believing" that Officer Tingley had

14 probable cause to arrest Oxborrow for carrying a concealed weapon

15 and exhibiting a firearm.  *Id.* at 228.  Here, Officer Tingley was

16 responding to a New Years Eve 911 call regarding a man in the

17 parking lot of Outlaws Bar with a gun.  Officer Tingley

18 approached the scene in search of a man with a gun.  After

19 Officer Tingley and his colleagues detained all subjects in the

20 parking lot at gunpoint, Oxborrow stated to a passing officer he

21 had a loaded gun in his car.  Officer Tingley approached

22 Plaintiff and asked Plaintiff where the weapon was located.

23 Plaintiff Oxborrow told Officer Tingley that the gun was in the

24 front seat.  Officer Tingley found a loaded gun in Plaintiff's

25 vehicle capable of being fired.  Officer Tingley then asked

26 Plaintiff if he had a concealed weapons permit and Plaintiff

27 responded in the negative.  Officer Tingley interviewed two

28 independent witnesses who stated they heard a noise and saw

1  Plaintiff holding a gun.  Officer Tingley and other officers
2  performed an investigation at the scene, interviewed witnesses,
3  suspects and made conclusions regarding the crimes committed.

4      Plaintiff's expert, former law enforcement officer and
5  instructor, Curtis J. Cope, opines that under California law
6  enforcement standards, an officer is taught that the officer may
7  make a warrantless arrest of a person whenever the officer has
8  probable cause to believe that the person to be arrested
9  committed a misdemeanor in their presence which includes carrying
10  a loaded firearm on an individual person's or in a vehicle while
11  in any public place or on any public street.  (Doc. 17-6, Cope
12  Decl., p. 4:14-18)  Mr. Cope further opines "that a reasonable
13  officer would have considered that there was probable cause to
14  arrest plaintiff at that time."  (*Id.* at p. 4:17-18)  The *time of*
15  *arrest*, is the standard for addressing qualified immunity and a
16  reasonable officer would have reason to believe that Officer
17  Tingley, with the information known to him, had probable cause to
18  arrest Plaintiff Oxborrow based upon California Penal Code
19  section 12025(a)(1) which states, "A person is guilty of carrying
20  a concealed firearm when he or she does any of the following:
21  Carries concealed within any vehicle which is under his control
22  or direction any pistol, revolver, or other firearm capable of
23  being concealed upon the person."  (*Id.* at p. 4:14-17)

24      A reasonable officer would have reason to believe that with
25  the information known to Officer Tingley, probable cause existed
26  to arrest Plaintiff Oxborrow based upon California Penal Code
27  section 417(a)(2), which states, in part, "Every person who,
28  except in self-defense, in the presence of any other person,

draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry or threatening manner, or who in any manner, unlawfully uses a firearm in any fight or quarrel is punishable..."  Two of the witnesses Officer Tingley interviewed told him they heard a noise and saw Plaintiff holding a gun. Plaintiff admitted to Officer Tingley the gun was his.  Plaintiff admitted he attempted to conceal the gun and thought he had been successful.  The officers found the gun loaded.

Defendant Officer Tingley disputes Plaintiff's self-defense assertion and responds that Plaintiff appeared intoxicated. Plaintiff stated to him that he had an opportunity to leave but choose not to because he was too intoxicated.  When Plaintiff obtained the gun from the trunk of his vehicle, no one was present.  All this weighed in Officer Tingley's determination that there was no valid self-defense claim.  Officer Tingley states that if Plaintiff was in fear of his life and safety, one would do pretty much "everything and anything to remove themself from the situation if, in fact, the person is in fear for his life."  (Doc. 17, Decl. Hager, Exhibit L, Depo. Tingley, p.56:20-25-57:1-23)  Defendant Officer Tingley alleges that Plaintiff had the opportunity to slowly walk away or run away from the scene because Mr. Lopez, who posed the threat had left the scene.  But Plaintiff and Mr. Bridges remained sitting in their vehicle for a period of time when they had the opportunity to leave.  (*Id.*, p. 60:10-16)

Officer Tingley had reasonable, trustworthy information from percipient witnesses on the scene, to believe Plaintiff Oxborrow had committed the offenses.  Even if Officer Tingley reasonably

but mistakenly concluded that probable cause was present, he is entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1994)("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'")

Defendants' motion for summary judgment on Plaintiff's § 1983 Fourth Amendment unreasonable search and seizure claim on qualified immunity grounds is GRANTED.

B.   Section 1983 Monell Liability

Plaintiff's Complaint alleges a claim against the City of Coalinga under Section 1983 for their custom, practice and policy of discrimination against persons who are not local residences. However, Plaintiff in its Opposition papers, to Defendants' Motion for Summary Judgment provides no argument nor evidence to survive a summary judgment challenge to any *Monell* claims.  Local governments are "persons" subject to suit for "constitutional tort[s]" under 42 U.S.C. § 1983. *Haugen v. Brosseau*, 339 F.3d 857, 874 (9th Cir. 2003)(*citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978))  "[O]ur holding...that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are "persons" under § 1983 in those cases in which, as here, a local government would be suable in its own name." *Monell*, 436 U.S. at 691 n.55.  "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional, implements or executes a policy statement, ordinance, regulation, or decision officially adopted and

1  promulgated by that body's officers...[or for] deprivations

2  visited pursuant to governmental 'custom' even though such a

3  custom has not received formal approval through the body's

4  official decisionmaking channels." *Id.* at 690-91.

5      To prevail on a § 1983 complaint against a local government

6  under Monell, a plaintiff must satisfy a three-part test: (1) The

7  official(s) must have violated the plaintiff's constitutional

8  rights; (2) The violation must be a part of policy or custom and

9  may not be an isolated incident; and (3) A nexus must link the

10  specific policy or custom to the plaintiff's injury. *See Monell*,

11  436 U.S. at 690-92.  There are three ways to show a policy or

12  custom of a municipality:

13          (1)  By showing a longstanding practice or custom which
           constitutes the standard operating procedure of the
14          local government entity;
           (2)  By showing that the decision-making official was,
15          as a matter of state law, a final policymaking
           authority whose edicts or acts may fairly be said to
16          represent official policy in the area of decision or
           (3)  By showing that an official with final
17          policymaking authority either delegated that authority
           to, or ratified the decision of, a subordinate.
18  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).

19      Plaintiff advised at oral argument that he was not pursuing

20  a *Monell* claim.  Defendants' motion for summary adjudication as

21  to Plaintiff's Section 1983 policy and custom claim against

22  Defendant City of Coalinga based on *Monell* is GRANTED.

23  C.   Section 1983: Fourteenth Amendment Equal Protection Under
24      the Laws

25      Equal Protection is a right secured by the United States

26  Constitution.  *See, e.g., Vill. of Willowbrook v. Olech*, 528 U.S.

27  562, 564 (2000) (Equal Protection clause intended to protect

28  every person within a state from intentional and arbitrary

discrimination).  A claim for equal protection under § 1983
requires Plaintiffs to show that Defendant Tingley, under color
of law, "acted with an intent or purpose to discriminate against
the plaintiff based upon membership in a protected class," in
violation of Plaintiffs right to equal protection of the laws
under the Fourteenth Amendment.  *Barren v. Harrington*, 152 F.3d
1193, 1194-95 (9th Cir. 1998)(*citing Washington v. Davis*, 426
U.S. 229, 239-40 (1976))

Plaintiff provides no evidence or any argument in support of
his third claim for Section 1983 violation of his Fourteenth
Amendment Equal Protection of the Laws that he is a member of a
cognizable class.  Plaintiff's Complaint alleges that Officer
Tingley violated his right to equal protection of the laws under
the Fourteenth Amendment because he targeted persons who were
non-residents for arrest without probable cause.  Neither party
objected to the dismissal of this claim at oral argument.

Defendants' motion for summary adjudication of Plaintiff's §
1983 Equal Protection under the Fourteenth Amendment claim is
GRANTED.

//
//
//
//
//
//
//
//
//

25

### 6. CONCLUSION

For all the reasons stated above,

Defendants' motion for summary judgment as to claims brought against Defendants Simons and Medina is GRANTED.

Defendant' Tingley's motion for summary judgment on Plaintiff's § 1983 Fourth Amendment claim is GRANTED on qualified immunity grounds.

Defendants' motion for summary adjudication on Plaintiff's § 1983 Monell policy and custom claim against the City of Coalinga is GRANTED. Judgment shall be entered against Plaintiff in favor of the City of Coalinga.

Defendants' motion for summary adjudication on Plaintiff's § 1983 Equal Protection under the Fourteenth Amendment claim is GRANTED.

Counsel for Defendants shall prepare and lodge a form of order and judgment reflecting the ruling made in this Memorandum Decision within 5 days of the filing date of this Memorandum Decision.

IT IS SO ORDERED.

Dated:    May 28, 2008               /s/ Oliver W. Wanger    
                                         UNITED STATES DISTRICT JUDGE